BANK OF WYOMING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16299. Promulgated April 9, 1931.

*David C. Howard, Esq.*, and *H. D. Battle, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

1134

**OPINION.**

BLACK: In its original petition, petitioner stated that it was appealing from deficiencies determined against it by the Commissioner for the years 1920 and 1921. However, no errors were assigned in the petition against the deficiency for 1920. The amended petition, upon which this proceeding was tried, made no mention of any deficiency for 1920, and at the hearing no evidence was offered by the petitioner concerning petitioner's income for 1920. At the conclusion of the hearing, counsel for the respondent moved that petitioner's appeal for 1920 be dismissed for lack of prosecution, with a finding that there is a deficiency for the calendar year 1920 in the amount of $32.56, as shown by the notice of a deficiency dated March 29, 1926. Said motion is granted and the appeal for 1920 is accordingly dismissed with a finding that there is a deficiency due by petitioner for that year of $32.56. *Atlas Plaster & Fuel Co.*, 18 B. T. A. 1123.

For 1921, petitioner alleges that it is not only not in default of any deficiency, but is entitled to a refund of taxes for that year in the

amount of $4,593.87. In support of such contention petitioner urges the following assignments of error:

1. The Income Tax Unit has erroneously failed to deduct from petitioner's income for the year 1921 the sum of $48,037, on account of accounts incurred during the year 1921 and ascertained to be worthless and uncollectible prior to December 31, 1921.

2. The Income Tax Unit has erroneously failed to deduct from taxpayer's income for the year 1921, the sum of $48,037, representing losses incurred by the Bank of Wyoming as the result of withdrawal of funds from it, through the making of loans known to be worthless and uncollectible when made.

Manifestly, petitioner can not claim its loss under section 234 (5) of the Revenue Act of 1921, because that provision not only requires that the debts shall be ascertained to be worthless during the taxable year, but that they shall be actually charged off within the taxable year. Petitioner not only did not charge off the debts set out in its petition during the taxable year, but carried them as assets on its books until 1926. It, therefore, can not secure a deduction for these several items under section 234 (5), Revenue Act of 1921.

Petitioner next claims the deduction under section 234 (4) permitting deductions to the taxpayer for losses sustained during the taxable year and not compensated for by insurance or otherwise. The following cases are cited in support of petitioner's contention on this point: *J. A. Bentley*, 5 B. T. A. 314; *John H. Farish*, 7 B. T. A. 793; *Peterson Linotyping Co.*, 10 B. T. A. 542; *Southern School-Book Depository, Inc.*, 10 B. T. A. 930. An examination of the facts in each of the cited cases shows that in each instance the losses claimed resulted from embezzlement by employees not discovered until in years subsequent to when the embezzlement took place. We do not think these cases are in point and we believe they are distinguishable on the facts from those in the instant case. Petitioner also cites *Parker Wire Goods Co.*, 8 B. T. A. 448. In that case we held that certain transfers of money and properties by the president and minority stockholder of the petitioner to another corporation, in which the said president and minority stockholder was the principal stockholder, the latter corporation being at all times insolvent, amounted to a fraudulent appropriation of the petitioner's goods and that the losses suffered by the petitioner on account thereof were deductible as "losses sustained during the taxable years 1918 and 1919" instead of as "debts ascertained to be worthless and charged off" within the year such losses were discovered. On the authority of the above decision, we hold that the so-called loans made by petitioner at the direction of J. C. Sullivan, president, to the Olymphia Oil Corporation in 1921, represent losses from the very time they were made, and petitioner is entitled to deduct these

amounts as losses in 1921 under section 234 (4), Revenue Act of 1921. Stock in the Olymphia Oil Corporation was owned entirely by Sullivan; it was wholly insolvent at the time the loans were made. These so-called loans were made because Sullivan was the dominating factor in the bank and were losses from the very beginning. They simply represented a raid on the bank to get money for one of Sullivan's enterprises already wholly insolvent. These so-called loans never did represent any real asset of the bank.

Such can not be said of the other loans, which petitioner seeks to treat in the same manner. The loan of $10,000 to the Raleigh Fire Creek Coal Company was made to a corporation which was a going concern at the time the loan was made, with large assets, and although it owed large liabilities at the end of 1921, it was by no means in failing condition and during 1921 had gross sales of $194,-969.69. There were other stockholders in this enterprise besides J. C. Sullivan, at whose direction the loan was made. There was no evidence to show that this loan was not made in the regular course of business and we have no reason to treat it differently from any other loan made by a going bank. The loans made to K. S. McClanahan, J. B. Frank, and John F. Koerner, were loans made to individuals in the regular course of the bank's business in 1921, and were represented by notes drawn up and signed in the regular way. The notes were secured by collateral of very doubtful value, if not indeed worthless. The loans were made at the direction of J. C. Sullivan, president of the bank, but there is nothing to show that he received any of the money or that they were made for his benefit. Evidently these loans were not such as a careful, prudent banker would have made, but this fact alone does not give us authority to allow them as losses during the taxable year under section 234 (4), Revenue Act of 1921. We think the situation as to the foregoing items just described is governed by our decision in A. W. Skaer, 10 B. T. A. 247. In that case the taxpayer made a loan, secured by a fraudulent chattel mortgage, and it was contended by the taxpayer that the loan was in reality a loss as soon as made. In denying his contention we said:

> There appears to be no doubt that the petitioner sustained a loss in the amount of the principal of the notes as a result of his loan to the Mollohans. The only question for this Board to determine is whether the loss occurred in 1919, when the loans were made, or in 1922, when the worthlessness of the security was ascertained. The petitioner contends that the loss sustained is comparable to an embezzlement or theft, and that, therefore, it occurred at the date when he parted with his money. With this view we are unable to agree.
>
> The loan was made to individuals who gave their notes therefor. It is not disputed that the signers of such notes were the identical persons who negotiated the loans. The chattel mortgage was no more than security for the payment of the notes. For all the record discloses, the Mollohans, at the time

they made the notes, may have owned all the cattle enumerated in the mortgage. In any event, the loans were evidenced not by the mortgage, but by the promissory notes of the Mollohans. We are of the opinion that, regardless of the value of the security, the transaction created a debt. Such debt, not having been ascertained to be worthless until 1922, can not, therefore, be deducted from the petitioner's gross income in the taxable year.

To the same effect is *Peoples Trust Co.*, 10 B. T. A. 1264; *National City Bank*, 11 B. T. A. 699; *Porter* v. *United States*, 27 Fed. (2d) 882; *Ledger Co.* v. *United States*, 37 Fed. (2d) 775. The amounts of indebtedness due petitioner by the Raleigh Fire Creek Coal Company, K. S. McClanahan, J. B. Frank, and John F. Koerner, did not represent losses during the year 1921, as contemplated by section 234 (4), and were not deductible as bad debt losses in 1921 under section 234 (5), because they were not charged off in that year, but were carried as assets of petitioner until 1926. Petitioner is not entitled to the deduction of losses claimed by him with respect thereto for the year 1921.

*Decision will be entered under Rule 50.*